**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| MARSHALL HORNSBY, individually and on behalf of all others similarly situated, | **Case No.** |
| Plaintiff, | **FLSA Collective Action** |
| v. | **Jury Trial Demanded** |
| SANCHEZ OIL & GAS CORPORATION, | |
| Defendant. | |

**ORIGINAL COMPLAINT**

**SUMMARY**

1.      Marshall Hornsby (Hornsby) brings this lawsuit to recover the unpaid overtime wages and other damages owed under the Fair Labor Standards Act (FLSA).

2.      Sanchez Oil & Gas Corporation (SOG) is a private company engaged in the management of oil and natural gas properties.[1]

3.      SOG employs oilfield personnel, like Hornsby, to carry out its work.

4.      Hornsby, and the other workers like him, were typically scheduled for 12 plus hour shifts, 7 days a week, for weeks at a time.

5.      But SOG did not pay Hornsby or the other workers like him overtime.

6.      Instead of paying overtime as required by the FLSA, SOG paid these workers a day-rate and improperly classified them as independent contractors.

---

[1] http://www.sanchezog.com/about/

7.     This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     Venue is proper pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

10.    Hornsby worked for SOG in Dimmit County, Texas, in this District and Division.

## PARTIES

11.    From approximately February 2016 to October 2018, Hornsby worked exclusively for SOG as a Company Man.

12.    Throughout his employment with SOG, he was paid a day-rate with no overtime compensation and he was classified as an independent contractor.

13.    His consent to be a party plaintiff is attached as Exhibit A.

14.    Hornsby brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid according to SOG's day-rate system.

15.    SOG paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek.

16.    The class of similarly situated employees sought to be certified as a collective action is defined as:

> **All Company Men who provided services to or on behalf of Sanchez Oil & Gas during the past 3 years who were classified as independent contractors and paid on a day rate basis with no overtime (the "Day Rate Workers").**

17.    Hornsby seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

18.     Defendant, Sanchez Oil & Gas Corporation, may be served by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

### FLSA COVERAGE

19.     Founded in 1972, SOG is a billion-dollar oil and gas company with operations throughout the United States.



20.     For at least the past decade, SOG has consistently employed hundreds of workers in the United States.

21.     SOG is an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

22.     SOG is a covered enterprise within the meaning of Section 3(r) of the FLSA.  29 U.S.C. § 203(r).

23.     SOG's annual revenues of more than $5,000,000 per year far exceed the minimum ($500,000) required for coverage under the FLSA.

24.     SOG's workers handled, sold, and/or worked on goods or materials that moved in or were produced for commerce by any person.

25.     For example, SOG's workers use wrenches, hammers, screw drivers, cell phones, automobiles, computers, steel toe boots, and fire-retardant clothing in performing their work.

26.     In assisting with the production of oil and gas, Hornsby and the Day Rate Workers engaged in commerce or in the production of goods for commerce.

27.     SOG treated Hornsby and the Day Rate Workers as employees and dictated the pay practices Hornsby and the Day Rate Workers were subjected to.

28.     SOG's misclassification of Hornsby and the Day Rate Workers as independent contractors does not alter its status as their employer for purposes of the FLSA.

## FACTUAL ALLEGATIONS

29.     SOG is a large oil and gas company.

30.     It operates throughout the United States, and in Texas.

31.     In order to make the goods and provide the services it markets to its customers, SOG employs oilfield personnel like Hornsby and the Day Rate Workers.

32.     These Company Men carry out the hands-on, day-to-day production work for SOG.

33.     The Company Men performed drilling and completions services for SOG.

34.     As a Company Man the Day Rate Workers were the "face" of SOG in the oilfield.

35.     SOG paid Hornsby and the Day Rate Workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

36.     SOG failed to pay Hornsby and the Day Rate Workers overtime for hours that they worked in excess of 40 hours in a workweek.

37.     For more than 2 years, Hornsby was one of these workers.

38.     Hornsby's schedule would vary, but in a standard two-week period, Hornsby worked at least 84 hours in one week, and at least 60 hours in the other week.

39.     But SOG did not pay Hornsby overtime.

40.     The work Hornsby performed was an essential part of producing SOG's core products and/or services.

41.     During Hornsby's employment with SOG, SOG exercised control (directly or jointly through another company) over all aspects of his job.

42.     Hornsby did not make substantial investment in order to perform the work SOG required of him.

43.     SOG determined Hornsby's opportunity for "profit."

44.     Because Hornsby received a daily rate for every day worked, Hornsby could not experience a "loss" in the sense relevant to determining whether someone is an employee under the FLSA.

45.     Hornsby's earnings were controlled by SOG through the number of days it scheduled him to work.

46.     Hornsby did not provide unique services indicative of a third-party contractor.

47.     Hornsby performed routine manual and technical job duties that were largely dictated by SOG.

48.     Hornsby worked exclusively for SOG while being misclassified as an independent contractor from approximately February 2016 to October 2018.

49.     Hornsby was not employed by SOG on a project-by-project basis, but rather on a consistent basis.

50.     SOG, individually and/or jointly with a company it contracted with, controlled all the significant or meaningful aspects of the job duties performed by Hornsby.

51.     SOG controlled the hours and locations Hornsby worked, the tools he used, and the rates of pay he received.

52.     Hornsby used equipment provided by SOG to perform his job duties.

53.     Hornsby did not provide the equipment he worked with on a daily basis.

54.     SOG made the large capital investments in buildings, machines, equipment, tools, personnel, and supplies in the business that Hornsby worked in.

55.     Hornsby did not incur operating expenses like rent, payroll, marketing, and insurance.

56.     Hornsby was economically dependent on SOG during his employment.

57.     SOG set Hornsby's rates of pay, his work schedule, and prohibited his (formally or practically) from working other jobs for other companies while he was working on jobs for SOG.

58.     Hornsby's working relationship with SOG was similar to that of the other Day Rate Workers.

59.     Very little skill, training, or initiative (in the relevant sense of "business initiative") was required of Hornsby and the Day Rate Workers to perform their job duties.

60.     Indeed, the daily and weekly activities of Hornsby and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created or mandated by SOG.

61.     Virtually every job function performed by Hornsby and the Day Rate Workers was pre-determined by SOG and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

62.     Hornsby and the Day Rate Workers were generally prohibited from varying their job duties outside of the pre-determined parameters.

63.     The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice.

64.     Like Hornsby, the Day Rate Workers were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

65.     Hornsby and the Day Rate Workers did not receive a salary.

66.     If Hornsby and the Day Rate Workers did not work on a particular day, they did not get paid for that day.

67.     Hornsby and the Day Rate Workers received a daily rate and were classified as independent contractors.

68.     Hornsby and the Day Rate Workers received the day rate regardless of the number of hours they worked in excess of 40 hours in a work week.

69.     Hornsby and the Day Rate Workers' pay fluctuated in lockstep with the number of days worked in a pay period.

70.     L Hornsby and the Day Rate Workers were paid their day rate times the number of days they worked in a week.

71.     Hornsby and the Day Rate Workers did not receive overtime pay.

72.     Hornsby and the Day Rate Workers relied on SOG for work and compensation.

73.     Hornsby and the Day Rate Workers were not permitted by SOG to subcontract out the work SOG assigned to them.

74.     Hornsby and the Day Rate Workers worked in accordance with the schedule set by SOG and its clients.

75.     Hornsby and the Day Rate Workers must follow SOG's policies and procedures.

76.     Hornsby and the Day Rate Workers' work must adhere to the quality standards put in place by SOG and its clients.

77.     Hornsby and the Day Rate Workers did not make substantial capital investments in the tools required to complete the jobs to which they were assigned.

78.     SOG knew, or acted with reckless disregard for whether, Hornsby and the Day Rate Workers were misclassified as independent contractors.

79.     SOG knows employees are entitled to overtime pay for hours worked in excess of 40 in a workweek.

80.     SOG has been involved in another lawsuit involving this same pay practice.

81.     Nonetheless, SOG failed to pay Hornsby and the Day Rate Workers overtime for those hours exceeding 40 in a workweek.

82.     SOG's policy of classifying Hornsby and the Day Rate Workers as independent contractors and failing to pay them overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees.

COLLECTIVE ACTION ALLEGATIONS

83.     The illegal pay practice SOG imposed on Hornsby were likewise imposed on the Day Rate Workers.

84.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA. The Day Rate Workers are similarly situated in relevant respects.

85.     Numerous other individuals who worked with Hornsby were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by applicable law.

86.     Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

87.     Hornsby and the Day Rate Workers are all entitled to overtime after 40 hours in a week for the same reasons.

88.     The overtime owed to Hornsby and the Day Rate Workers will be calculated using the same records and the same formula.

89.     Hornsby and the Day Rate Workers are geographically disbursed, residing and working in states across the county.

90.     SOG's failure to pay overtime at the rates required federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

91.     Hornsby's experiences are therefore typical of the experiences of the Day Rate Workers.

92.     Hornsby has no interests contrary to, or in conflict with, the Day Rate Workers.

93.     Absent a collective action, many members of the FLSA Class likely will not obtain redress of their injuries and SOG would retain the proceeds of its violation of the FLSA.

94.     Individual litigation would be unduly burdensome to the judicial system.

95.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

96.     Hornsby and the Day Rate Workers are similarly situated within the meaning of 29 U.S.C. § 216(b).

### CAUSE OF ACTION

### <u>Violation of the FLSA</u>

97.     As set forth herein, SOG has violated, and is violating, the FLSA by employing Hornsby and the Day Rate Workers in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

98.     SOG knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Hornsby and the Day Rate Workers overtime.

99.     SOG's failure to pay overtime compensation to these employees was not reasonable, nor was the decision not to pay overtime made in good faith.

100.    SOG's failure to pay Hornsby and the Day Rate Workers overtime at rates not less than one and one-half times their proper regular rate violates 29 U.S.C. § 207.

101.    Accordingly, Hornsby and the FLSA Class are entitled to overtime under the FLSA, liquidated damages, attorney's fees and costs.

### JURY DEMAND

102.    Hornsby demands a trial by jury.

## PRAYER

WHEREFORE, Hornsby prays for:

a.   An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the proposed Day Rate Workers to permit them to join this action by filing a written notice of consent;

b.   A judgment against SOG awarding Hornsby and the Day Rate Workers all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.   An order awarding attorney fees, costs, and expenses;

d.   Pre- and post-judgment interest at the highest applicable rates; and

e.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
**Michael A. Josephson**
State Bar No. 24014780
**Andrew Dunlap**
State Bar No. 24078444
**Richard M. Schreiber**
State Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**